IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES A. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-01084 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN WETZEL, MALINDA ADAMS, | ) | |
| K. FEATHER, and  ADAM MAGOON, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Charles Robinson commenced this civil action, proceeding *pro se*, against defendants John Wetzel, Malinda Adams, Karen Feather, and Adam Magoon ("Defendants"). Robinson asserts that while he was housed at the State Correctional Institution at Mercer ("SCI-Mercer"), Defendants violated his civil rights because they "neglected safety protocols, and precautions set as preventative measures to contracting COVID-19" in violation of his Eighth and Fourteenth Amendments.

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 86) as to all federal claims asserted against them, enter judgment in their favor and against Plaintiff on all federal claims, and dismiss Plaintiff's remaining state-law claims without prejudice to bring in state court.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636 (ECF Nos. 2, 44).  Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

## I.    Relevant Procedural History

Plaintiff Charles A. Robinson ("Robinson") filed his initial Complaint on September 16, 2021 (ECF No. 10), against multiple defendants, including unnamed Doe defendants.  He later filed an Amended Complaint (ECF No. 17) and a Second Amended Complaint, which is the operative pleading, in which he identified the Doe defendants (ECF No. 27).  None of Robinson's complaints were verified.

The Second Amended Complaint asserts claims against Adam Magoon, a corrections officer at SCI-Mercer, Karen Feather, the Corrections Healthcare Administrator at SCI-Mercer, John Wetzel, the former Secretary of the Department of Corrections (DOC), and Malinda Adams, the SCI-Mercer Superintendent.

In July 2022, Defendants moved for summary judgment (ECF No. 86), and filed a Brief in Support (ECF No. 87), a Concise Statement of Material Facts (ECF No. 90), and an Appendix of Exhibits (ECF No. 88).  The Court ordered Robinson to respond to Defendants' motion by August 29, 2022 (ECF No. 91).  Robinson requested and was granted an extension of time within which to respond (ECF Nos. 92, 93) but he then failed to meet the new deadline of September 30, 2022.

Out of an abundance of caution because Robinson notified the Court of a change of address on August 26, 2022 (ECF No. 94), the Court ordered Defendants to re-serve their motion for summary judgment and it set a new response deadline of October 10, 2022 (ECF No. 95). Robinson once again failed to meet the ordered deadline and the Court again extended the deadline, and in so doing, advised Robinson that if he did not respond, the Court would proceed to decide the motion on the merits without his response (ECF No. 96).  After Robinson asked for yet another extension (ECF No. 97), the Court granted one final deadline of November 21, 2022 (ECF No.

98). Robinson failed to file any response to Defendants' motion for summary judgment.

As a result, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.C.1, the facts in Defendants' Concise Statement of Material Facts are undisputed for the purpose of resolving Defendants' Motion.

## II.    Relevant Factual Background

SCI-Mercer has closely adhered to the Center for Disease Control ("CDC") guidance in matters related to the COVID-19 Pandemic. ECF No. 90, ¶ 11. SCI-Mercer followed CDC protocol specific to Correctional and Detention Facilities, the Pennsylvania Department of Health, and its own medical team to ensure the safety of inmates and staff within the facility. *Id*.

From November 17, 2020, through December 19, 2020, the HB Unit of SCI-Mercer, where Robinson was housed, was on enhanced COVID quarantine because of an outbreak of COVID among the inmates on that unit. ECF No. 90, ¶ 19. During this time inmates remained in their cells except to shower daily and after 14 days of enhanced quarantine inmates were permitted daily access to phones and the kiosk. *Id*. ¶ 20; ECF No. 88-2 ("Declaration of Melinda Adams").

On March 16, 2020, before the prison system implemented any COVID preventive measures, Superintendent Adams instructed the staff to remove the grievance boxes from the housing units to relieve the burden of collecting grievances in multiple places. ECF No. 90, ¶ 1. According to Adams, this decision was unrelated to COVID in any way. ECF No. 88-2, ¶ 2. When the unit grievance boxes were removed, Adams directed the staff to place the word "Grievance" on the postal mailboxes and to advertise to the prisoners the change in grievance procedure. ECF No. 90*,* ¶¶ 1, 3. In addition to using the postal mailbox to deposit grievances, inmates also had the option of handing their grievances directly to the Superintendent's Assistant during her weekly

3

rounds on the units, or they could use the grievance designated box in the dining hall. *Id.* ¶¶ 4, 5. However, the dining hall was inaccessible during the COVID quarantine and as of October 21, 2020, SCI-Mercer was informed that the dining hall was not going to reopen. *Id.* ¶ 6.

Robinson claims that he filed grievances in July 2020, December 2020, and April 2021.[2] ECF No. 90, ¶ 9. Robinson testified that he must have submitted the 2020 grievances by giving them to one of the staff when they made their rounds. ECF No. 88-1, pp. 12-13, 15. According to Robinson, by April 2021, the inmates were "out a little more" and "it was probably easier" to submit a grievance. *Id.* at 15. None of Robinson's grievances were appealed to final review. *Id.* ¶ 10.

## III.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *See id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *See id.*; *see, e.g.*, *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

---

[2] Notably, there is no record evidence about the nature of the grievances.

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *See Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cnty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.

2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Discussion

Defendants assert that they are entitled to judgment in their favor because: (1) Robinson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), and (2) even if Robinson had properly exhausted his administrative remedies, he failed to show that the Defendants acted with deliberate indifference as required for an Eighth Amendment violation (ECF No. 86).

### A.    Plaintiff Failed to Exhaust His Eighth and Fourteenth Amendment Claims

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions.   42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court.  *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  Exhaustion is mandatory under the PLRA regardless of the type of relief sought and the

type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Courts are not given discretion to decide whether exhaustion should be excused, *Ross*, 578 U.S. at 641, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *See Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d. at 227-30.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 ("prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak,* 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The Court of Appeals has explained that if the defendant demonstrates that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268).

The DOC's official Inmate Grievance System is set forth in DC-ADM 804. It "is intended

to deal with a wide range of issues, procedures, or events that may be of concern to an inmate[,]" including challenges or complaints about prison policies. DC-ADM 804, § 1.A.2; *see also id.* at p. 13, DC-ADM 804 § 1.A.13 ("[a]n inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance.").

DC-ADM 804 sets forth a three-tier administrative remedy system. A prisoner is required to present his grievance to the Facility Grievance Coordinator for initial review. *Id.*, § 1.A.5. The prisoner is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. *Id.*, § 2.A. From there the prisoner must appeal to the DOC's Secretary's Office of Inmate Grievances and Appeals for appeal to final review. *Id.*, § 2.B.

It is undisputed that Robinson failed to exhaust his administrative remedies with respect to the grievances he asserted in July 2020, December 2020, and April 2021 as he failed to appeal them to final review as required by DOC policy. Thus, Defendants have satisfied their burden of demonstrating that Robinson failed to exhaust his administrative remedies.[3] Therefore, the burden shifts to Robinson to demonstrate that administrative remedies were unavailable to him. He has not done so.

The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 578 U.S. at 642-43 (quoting *Booth,* 532 U.S. at 738).

[The Court] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with

---

[3] As previously noted, the nature of the grievances that were submitted is not in the record. While the Court assumes that they may relate to Robinson's claims in this action, it becomes immaterial as either he filed grievances that he did not appeal or filed no grievances at all. In either event, he failed to exhaust his administrative remedies as to his claims.

officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Rinaldi*, 904 F.3d at 266-67 (quoting *Ross*, 578 U.S. at 644). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). The Court of Appeals has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement" but only as to the matters complained of and the relief sought in the grievance. *Shifflett*, 934 F.3d at 365. Absent a situation where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 578 U.S. at 639.

It is uncontroverted that at a minimum, the grievance process was available to Robinson in July 2020, December 2020, and April 2021. There is no evidence in the record that at any other time relevant to the claims asserted by Robinson, the process was unavailable to him. In fact, Robinson has failed to submit any evidence in this case. Thus, he has not satisfied his burden to proffer some evidence that administrative remedies were unavailable for his claims.

Accordingly, Defendants are entitled to judgment in their favor regarding Robinson's federal claims because Robinson procedurally defaulted the Eighth and Fourteenth Amendment claims he brought against them in this lawsuit.

B.    Plaintiff's State Law Claims

Where, as is the case here, all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over remaining

state law claims. 28 U.S.C. § 1367(c)(3).  Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals has held that, absent extraordinary circumstances, pendent jurisdiction should be declined where the federal claims are no longer viable.  *See Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).

Robinson's federal claims are no longer viable, and no extraordinary circumstances warrant the exercise of supplemental jurisdiction over his state law claims. Accordingly, the Court will dismiss Robinson's state law claims without prejudice.  *See, e.g.*, *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013; *Camacho v. Beers*, No. 16-cv-1644, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018).

## V.    Conclusion

For these reasons, the Court will grant Defendants' Motion for Summary Judgment (ECF 86) as to the Eighth and Fourteenth Amendment claims asserted against them, enter judgment in their favor and against Plaintiff on these federal claims, and dismiss Plaintiff's remaining state-law claims without prejudice to bring in state court.

Appropriate orders follow.

BY THE COURT:


Dated: March 2, 2023                              /s/ Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge